FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2002 MAR 12  A 10: 49

| | | |
|---|---|---|
| JIMMIE F. MILES | : | |
| v. | : CIVIL NO. L-00-1736 | _____ DEPU. |
| SHERWIN-WILLIAMS COMPANY | : | |

MEMORANDUM

On June 12, 2000, *pro se* Plaintiff Jimmie Faye Miles filed suit against her former employer, the Sherwin-Williams Company ("Sherwin-Williams"). Ms. Miles' Complaint alleges: (i) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (ii) the Maryland common law tort of slander. On April 5, 2001, Defendant filed a Motion for Summary Judgment. The Court has reviewed the papers and will decide the Motion on the memoranda submitted. See Local Rule 105.6 (D. Md. 1999). For the following reasons, the Court will, by separate Order, GRANT Defendant's Motion for Summary Judgment.

**I. Factual Background**

Ms. Miles is an African American woman. In June of 1997, she was hired by Sherwin-Williams as a temporary employee. Ms. Miles worked in the mixing room of the Rubbersett Company, a Sherwin-Williams subsidiary located in Crisfield, Maryland. She worked on an "as-needed" basis throughout her tenure with the Company.

When Ms. Miles applied the temporary position at Sherwin-Williams, she filled out an employment application. On the application, under the heading "year graduation," Ms. Miles wrote "1982." In actuality, Ms. Miles only completed the 8th grade and did not have a high school degree.

1

Ms. Miles claims that she initially left the space under the heading "year graduation" blank, and only filled it in after Tanya Plylar, the Human Resource Director at Rubberset, told her to fill in the last date on which she had attended high school. Ms. Plylar denies giving Ms. Miles these instructions.

The temporary position for which Ms. Miles was hired did not require a high school degree and, at the time Ms. Miles was hired, Sherwin Williams did not require permanent employees to have high school degrees. Beginning in February 1999, however, all applicants for permanent positions with Sherwin-Williams were required to have high school degrees.

In February of 1999, Sherman-Williams announced openings for three permanent positions. On February 9, 1999, Ms. Miles applied for each of the three permanent positions. As part of the application process, Ms. Miles filled out an application form on which she claimed to have completed 11th grade.

During the application process for the permanent position, Ms. Miles was informed that the position required a high school diploma. Shortly thereafter, Ms. Miles disclosed to Ms. Plylar that she did not have a high school diploma. Ms. Plylar then terminated Ms. Miles' employment for falsifying her original employment application. Plaintiff alleges that Ms. Plylar told several Sherman-Williams employees that Plaintiff was "fired for falsifying her application." Ms. Plylar denies making these statements.

The three permanent positions for which Ms. Miles had applied were filled by John Borden (African American male), Maria Williams (Hispanic female), and Shirl Carmine (Caucasian female). These three applicants were selected based on rankings derived from supervisor recommendations. Ms. Miles was not ranked in the top three of the applicants for any of the three permanent positions. Thus, Defendant contends that Ms. Miles would not have been

promoted to a permanent position even if she had the requisite high school degree needed for a permanent position.

On June 12, 2000, Ms. Miles filed suit alleging that: (i) Sherwin-Williams discriminated against her based on her race when it terminated her employment; and (ii) Ms. Plylar's remarks to other employees regarding Plaintiff's termination constitute slander under Maryland law.

## II. Standard for Summary Judgment

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III. Analysis

### A. Wrongful Termination

Ms. Miles contends that Defendant terminated her employment because she is an African American.[1] Defendant contends that Ms. Miles was terminated for falsifying her academic credentials on the original employment application.

In order to survive Defendant's Motion for Summary Judgment, Ms. Miles must produce evidence from which a jury could draw a reasonable inference of discrimination in violation of Title VII. One method available to plaintiffs for establishing a reasonable inference of discrimination is the burden-shifting proof structure established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In order to establish a prima facie case of wrongful termination under McDonnell Douglas, a plaintiff must prove that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she was discharged; and (4) the employer sought to fill the position with a similarly-qualified individual from outside of her protected class. See id. at 802.

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if the defendant

---

[1] Ms. Miles' Complaint does not appear to allege a Title VII claim for failure to promote on the basis of her race or gender. Regardless, any "failure to promote" portion of Ms. Miles' claim would fail the second prong of the McDonnell Douglas test, which requires a plaintiff to demonstrate that she was qualified for the position for which she was applying. An employer "has the right to fix the qualifications that are necessary or preferred in hiring an employee, and in order to make out a prima facie case, a plaintiff must establish that she meets those qualifications." EEOC v. Jordan Graphics, Inc., 769 F. Supp. 1357, 1380 (W.D.N.C. 1991)(citing Federal Reserve Bank of Richmond, 698 F.2d 633, 671 (4th Cir. 1983)). It is uncontested that a high school degree was a prerequisite for each of the permanent positions. Ms. Miles did not have a high school degree and she has not argued that the high school degree requirement itself violates Title VII.

provides such a reason, the plaintiff must then demonstrate that the proffered reason is a pretext for discrimination. See Gillins v. Berkeley Electric Cooperative, Inc., 148 F.3d 413 (4th Cir. 1998); Lilly v. Harris-Teeter Supermarket, 842 F.2d 1496, 1503 (4th Cir, 1988).

A reasonable jury could not find that Ms Miles has satisfied the McDonnell Douglas proof structure because she has not demonstrated that her employer sought to replace her with an individual outside of her protected class. Defendant has submitted an affidavit stating that no one was hired to fill Ms. Miles' position after her termination. Thus, Ms. Miles' wrongful termination claim fails to satisfy the fourth prong of the McDonnell Douglas test.

Plaintiffs in Title VII cases do not necessarily have to satisfy the McDonnell Douglas formula to raise a reasonable inference of discrimination, however. Instead, a court will evaluate all of the admissible evidence submitted by a plaintiff in order to determine if a jury could reasonably conclude that an employer has violated Title VII. See Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159, 70 FEP 921 (7th Cir. 1996). In this case, Ms. Miles has made several allegations of disparate treatment that are intended to demonstrate discriminatory animus on the part of Defendant. These allegations do not, however, suffice to raise a reasonable inference of discrimination.

In order to demonstrate discriminatory animus, Ms. Miles points to the following allegations of disparate treatment:

(i)   Marcia Williams, the Hispanic woman who was promoted to one of the permanent positions, did not have a high school degree;

(ii)  Al Morris, a Caucasian Male, was not disciplined after he slapped a co-worker;

- (iii) an African American employee, Charles Terpin, was fired for sleeping on the job and a Caucasian employee, Josh Lambertson, was not fired after he was caught sleeping on the job;
- (iv) Janine Summers and St. Claire Douglas, both African Americans, were not fired for smoking marijuana in the company parking lot; and
- (v) several permanent employees at Sherman-Williams do not have high school diplomas.

These alleged incidents do not raise a reasonable inference of discrimination. Marcia Williams' promotion was revoked immediately after it was discovered that she did not have a high school degree or its equivalent. She was not terminated, however, because her degree, which had been awarded in Mexico, was written in Spanish and was at first mistakenly treated as the equivalent of a high school degree.

It is true that some of Defendant's permanent employees do not have high school degrees. This is because Defendant's policy of requiring high school degrees was subject to a grandfathering exception. Thus, individuals employed by Defendant at the time the policy was enacted were not subjected to the high school diploma requirement. Ms. Miles has not pointed to an incident of an employee without a high school degree being hired to a permanent position since the enactment of Defendant's policy, other than Marcia Williams.

Plaintiff's allegations involving Al Morris, Josh Lambertson, Charles Terpin, Janine Summers, and St. Claire Douglas do not raise a reasonable inference of discrimination. Plaintiff's allegations that Al Morris slapped a fellow employee and Josh Lambertson was caught sleeping on the job are based solely on second-hand rumors, and are, therefore, inadmissible

hearsay. Regardless, neither event serves to raise a reasonable inference of discrimination regarding the motivations behind Ms Miles' termination.

The only admissible evidence regarding the termination of Charles Terpin is that Terpin was caught sleeping in a dangerous area of the plant. There is no evidence rebutting Defendant's legitimate, nondiscriminatory reason for Terpin's termination - the safety threat posed by his inattention to his work. Thus, this incident does not serve to raise a reasonable inference of discrimination.

Finally, Ms. Miles' contention that two African American employees were *not* fired for smoking marijuana in the parking lot only undercuts her claim that Defendant bears discriminatory animus towards African Americans.[2]

## B. Slander

The statute of limitations for slander, unlike most other torts, is one year. See MD. CODE ANN., CTS & JUD. PROC. ART. §5-105. Ms. Miles alleges that Ms. Plylar slandered her on February 11, 1999. Ms. Miles filed suit on June 12, 2000, which is outside the one-year statute of limitations. Accordingly, Ms. Miles's claim for slander cannot stand.

---

[2] Likewise, the promotion of an African American man and a Hispanic woman to two of the permanent positions for which Plaintiff was applying further undermines Plaintiff's contention of racial discrimination in Defendant's promotion and firing practices.

## III. Conclusion

For the reasons stated above, the Court shall, by separate Order, GRANT Defendant's Motion for Summary Judgment and direct the CLERK to CLOSE the case.

Dated this **8TH** day of March, 2002.

Benson Everett Legg
United States District Judge